Dennis Stanley GALITZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 66363, 66364.

Court of Criminal Appeals of Texas,
En banc.

July 1, 1981.

Jack B. Zimmermann & Kevin Cunningham, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Susan W. Crump & Ray Fuchs, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge.

On original submission of these causes, appellant set forth in each a single ground of error contesting the legality of the search of his person and, ultimately, his apartment, which produced fruits, the possession of which comprised the forbidden conduct of which he was convicted. A panel of the Court, in a per curiam opinion, Tex.Cr.App., 613 S.W.2d 302, declined to reach the merits of the issue presented, determining respectively that evidence obtained independently of the search was introduced to support the conviction in Cause No. 66,363, and that appellant's failure to raise the search contention by written pretrial motion in Cause No. 66,364 constituted a forfeit of his right to appeal under the provisions of Article 44.02, V.A.C. C.P. Each' case was tried upon appellant's plea of guilty.[1]

On careful consideration of the entire records in these causes, we are constrained to

---

1. In Cause No. 66,363 appellant was convicted of unlawfully carrying a weapon on premises licensed to sell alcoholic beverages which is denounced by V.T.C.A.Penal Code, § 46.02(c),

agree with appellant that the panel was in error on both counts and, thus, his motions for rehearing must impel an examination of the merits of his grounds.

The treatment of these causes by the panel on original submission, as well as the stout motion for rehearing assailing it,[2] indicate a full discussion of the law governing the right of appeal in cases tried before the court upon a plea of guilty, which we now turn to undertake.

■■■ As was fully explained in *Garcia v. Dial,* 596 S.W.2d 524 (Tex.Cr.App.1980), unless the power or authority of a court to perform a contemplated act can be found in the Constitution of this State or laws enacted thereunder, that court is without "subject matter jurisdiction" to so perform. Thus the power of this Court to perform the contemplated act of considering an appeal from a criminal conviction obtained in a district court of this State is solely determined by legislative authorization;[3] in short, the right to appeal in this State is a statutory right. *Ex parte Paprskar v. State,* 573 S.W.2d 525 (Tex.Cr.App.1978); *Savage v. State,* 237 S.W.2d 315 (Tex.Cr. App.1950).

And so it was until 1977 that "a defendant in *any* criminal action [had] the right to appeal...." Article 44.02, V.A.C.C.P. But then this broad grant of the right to appeal was narrowed as regards would-be appellants who choose to enter pleas of guilty before the trial court and are sentenced within the terms of a plea bargaining agreement; for them new jurisdictional requisites were established by amendment, effective August 29, 1977:

> "A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed, provided however, *before a defendant* who has been convicted upon either his plea of guilty or plea of nolo contendere before the court and the court, upon the election of the defendant, assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney *may prosecute his* appeal, he must have *permission of the trial court, except* on those *matters which have been raised by written motion filed prior to trial.*"[4]

■ Thus the statute presently in effect places a burden on one who would appeal from a negotiated proceeding before the court to make manifest upon the record the following requisites in order to *invoke the jurisdiction* of this Court under the proviso: (1) existence of a plea bargaining agreement with the State;[5] (2) punishment assessed by the trial court at or within that recommended by the prosecutor[6] and agreed to personally by the defendant;[7] (3) the basis of the appellate ground of error has been presented in writing, pretrial, to the trial court for consideration *OR* the trial court has given permission to pursue an

---

as a felony of the third degree. The conviction in Cause No. 66,364 is for possession of four ounces or less of marihuana, a class A misdemeanor. Section 4.05(a) and (b)(2), Tex.Rev. Civ.Stat.Ann., Art. 4476–15.

For the sake of clarity, the cases will be referenced throughout as "the felony" and "the misdemeanor."

2. Also before us on rehearing is an amicus curiae brief filed on behalf of the Harris County Criminal Lawyers Association, which indicts this Court for everything from negating the legislative intent of Article 44.02, supra, by prior decisions to a total failure to follow those decisions in the instant case, and urges us to overrule *Ferguson,* infra, and its progeny.

3. Such legislative authority to regulate this Court's jurisdiction over subject matter is conferred, of course, by our Constitution. Article

V, § 5, Tex.Const. Thus, its appellate jurisdiction is subject to "such exceptions and under such regulations as may be prescribed by law."

4. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

5. *Prochaska v. State,* 587 S.W.2d 726 (Tex.Cr. App.1979).

6. If the trial court refuses to follow the prosecutor's recommendation, the defendant's remedy is to withdraw his plea as a matter of right. See Article 26.13, V.A.C.C.P.

7. *Decker v. State,* 570 S.W.2d 948 (Tex.Cr.App. 1978).

appeal in general or upon specific contentions. Absent the showing of all three of these jurisdictional requisites there is no power extant in this Court to take cognizance of issues "appealed" by appellants so situated. *Haney v. State*, 588 S.W.2d 913 (Tex.Cr.App.1979); *Mitchell v. State*, 586 S.W.2d 491 (Tex.Cr.App.1979); *Ferguson v. State*, 571 S.W.2d 908 (Tex.Cr.App.1979).

So in the *jurisdictional* sense, the present version of Article 44.02 restricts the previously unfettered appellate right of the instant class of appellants;[8] but, as a matter of *appellate constraints*, that appellate right has been liberalized by the amendment. For example, a rule previously applicable was as stated in *Helms v. State*, 484 S.W.2d 925, 927 (Tex.Cr.App.1972):

> "When a plea of guilty is voluntarily and understandingly made, all nonjurisdictional defects including claimed deprivation of federal due process are waived. *Soto v. State*, Tex.Cr.App., 456 S.W.2d 389; *Fierro v. State*, Tex.Cr.App., 437 S.W.2d 833."[9]

See also *Isam v. State*, 582 S.W.2d 441 (Tex.Cr.App.1979), [holding Article 44.02, supra, abrogates former rule applied in pleas to misdemeanors].

Thus, the changes wrought by the 1977 amendment to Article 44.02, supra, touch appellate jurisdiction and, by operation

thereof, some principles of appellate procedure; nothing more. And certainly, the amendment in no way serves to alter rules of *evidence*, or the constitutional doctrine of harmless error.

Indeed, applying settled principles to cases appealed under the Article 44.02 proviso, this Court has held that *evidence* derived from a contested search and seizure which is *not introduced* by the State to meet its burden to support the conviction on a plea with sufficient evidence, cannot form the basis for a reversal on appeal, notwithstanding an erroneous ruling on its admissibility by the trial court. *Brewster v. State*, 606 S.W.2d 325 (Tex.Cr.App.1980); *Mitchell*, supra; *Ferguson*, supra.[10]

Similarly, the principle of "harmless error" has been applied to cases before us pursuant to the proviso: *Ferguson*, supra, at 910, determined that any erroneous ruling made on a pretrial motion to suppress will not vitiate the conviction, if the plea of guilty is supported by evidence "independent of the matter contested in the pretrial motion." See also *Brewster*, supra; *Roberts v. State*, 587 S.W.2d 724 (Tex.Cr.App. 1979); *Mitchell*, supra.

The latter rationale involved in *Ferguson*, supra, was more fully explicated in *Haney v. State*, 588 S.W.2d 913, 914–915 (Tex.Cr. App.1979):

---

8. However, should the record reflect either no plea bargaining agreement, or no personal assent by the defendant to the recommendation of the prosecutor, or a plea to a jury, it follows that Article 44.02, supra, may not operate to deny him his right to appeal to this Court. E. g., *Ex parte Sterling*, 595 S.W.2d 536 (Tex.Cr. App.1980); *Cleveland v. State*, 588 S.W.2d 942 (Tex.Cr.App.1979); *Prochaska*, supra; *Decker*, supra.

9. Thus, appellants in the posture of those described in n. 8, *ante*, while having an absolute right to invoke the appellant jurisdiction of this Court, will still forfeit as a matter of appellate cognizance claims involving all but those directed to the jurisdiction of the trial court. E. g., *Cleveland*, supra, *Prochaska*, supra. See also *Helms*, supra.

10. Apparently it is the failure to comprehend in the context the difference between "evidentiary" and "procedural" concepts which underlies the frantic entreat of our amicus curiae that our continued reliance on *Ferguson*, supra, "in-

dicates to members of the bar that V.A.C.C.P., Art. 44.02 cannot be effectively implemented as a means to protect the rights of a criminal defendant."

We do not see the ominous implications of our adherence to *Ferguson*. A "motion to suppress" *evidence* is nothing more than a specialized objection to the *admissibility* of that evidence. A primary purpose of requiring a specific objection is "to afford opposing counsel an opportunity to remove the objection or *supply other [evidence]*." *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App.1977). Thus, when the objectionable evidence is not offered, it is as if the objection had been sustained, since the objecting party has received all the relief sought: exclusion of that evidence.

We find the suggestion—that through enactment of Article 44.02, supra, the Legislature intended nullification of this universal evidentiary rationale in pleas of guilty—to be utterly untenable.

"If lawfully obtained evidence of guilt is overwhelming, any constitutional error will generally be considered harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). This doctrine has been specifically applied to the introduction of *wrongfully obtained evidence*. E. g., *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Wood v. State*, 573 S.W.2d 207 (Tex.Cr.App. 1978); *Hunnicutt v. State*, 531 S.W.2d 618 (Tex.Cr.App.1976). * * * It is difficult to imagine any evidence of guilt that could be more overwhelming than a voluntary admission by the accused on the stand, after full warning by the trial court, that he committed the offense as charged. In the absence of any evidence that undermines or conflicts with the credibility of such an admission, *a judicial confession will nullify the prejudicial effect of the introduction of illegally obtained evidence in the guilty plea hearing.*" [11]

Turning to the instant case, the record reflects that on November 15, 1979, an examining trial was conducted in the felony case, at which time the State called Houston police officers P. A. Brooks and Sergeant M. J. Tarver. Briefly, the officers testified that pursuant to information received from an unidentified informant, they sought and found appellant in the late hours of November 1, 1979 at the Jesse James Club, an establishment licensed to sell alcoholic beverages. They identified themselves and requested that appellant step outside to talk, which he did. As the men descended stairs outside the club, Brooks observed a pistol through the slit in the back of appellant's jacket. At the bottom of the stairs, Brooks seized the weapon

and placed appellant under arrest for "carrying a pistol." Appellant was taken to Officer Brooks' office and warned of his rights. Thereafter, he signed a written consent to search his apartment, and sometime after 2:30 a. m. Brooks and appellant proceeded to the apartment where a search produced a quantity of marihuana.

On November 26, 1979, an indictment was filed, charging appellant with "carrying a weapon on liquor licensed premise." The next day appellant was likewise charged by indictment, with possession of marihuana.

Thereafter, appellant filed his motion to suppress in the felony case, requesting the trial court to "suppress for all purposes *evidence concerning the search* of his person *and the seizure* therefrom of said weapon, possession of which forms the basis of this prosecution." And on April 2, 1980, a hearing was convened on the motion to suppress; at this time, the transcription of the court reporter's notes of the November 15 examining trial testimony was introduced as Defense Exhibit No. 1 by agreement of the parties. After hearing argument, the trial court overruled the motion to suppress.

Immediately thereafter, defense counsel advised the court that the parties were ready to proceed to disposition of the felony cause on the merits, then stated,

"We would urge the Court at this time *to permit the defendant* in ... No. 305,-877,[12] styled The State of Texas vs. Dennis Galitz, which was a related charge in which ... the search issue stems from the same issue the Court has just denied ... *to enter a plea to that and at the same time preserving our right to appeal* based on the ruling the Court has just made....

THE COURT: All right. Gentleman, certainly the Court will permit you to

11. And this is true irrespective of whether the accused affirms the truth of the charge against him in a writing which is introduced into evidence, see, e. g., *Brewster*, supra; *Roberts*, supra; *Mitchell*, supra; see also *Potts v. State*, 571 S.W.2d 180 (Tex.Cr.App.1978); but see *Garcia v. State*, 571 S.W.2d 896 (Tex.Cr.App. 1978), or affirms it orally on the stand after

having been sworn. See, e. g., *Haney*, supra; *Ferguson*, supra; but see *Craven v. State*, 607 S.W.2d 527 (Tex.Cr.App.1980); and *Dinnery v. State*, 592 S.W.2d 343 (Tex.Cr.App.1980).

12. Appellate Cause No. 66,364—the misdemeanor possession of marihuana.

give your Notice of Appeal concerning this matter in the event there is a plea of guilty entered in the case and a finding of guilty and also you already have that right counsel, . . . but *so that there be no misunderstanding, the Court also gives you permission and consent to give Notice of Appeal and appeal this cause.*"

At this point the plea hearing on the felony commenced.

After determining that appellant's plea was entered voluntarily, his waiver of trial by jury was intelligent and that he understood the range of possible punishments, the trial court proceeded:

"THE COURT: Even though you plead guilty, Mr. Galitz, under the law the State must introduce evidence to prove that you are guilty. Is it agreeable with you now if the State introduces as evidence, *the examining trial testimony,* if there is any, and the sworn affidavits of witnesses rather than have the witnesses come here in person and testify? Is that agreeable?

THE DEFENDANT: Yes, sir.

THE COURT: Is it also agreeable with you that the State may introduce as evidence any other written instruments, items or documents in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you consent to both the oral and written *stipulations* here *of the testimony in evidence* ?

THE DEFENDANT: Yes, sir.

THE COURT: Is all this agreeable with you, Mr. Zimmerman?

MR. ZIMMERMAN: It is, Your Honor. We are stipulating to that introduction of

[that] evidence, particularly the evidence which has been before the Court *in the form of a transcript in the examining trial* in this cause. So the record is clear, *we are stipulating that that is what the witnesses would say and not necessarily to the truth of what they would say.*

THE COURT: Are these your stipulations also, Mr. Harmon, for the State?

MR. HARMON: Yes, Your Honor."

The trial judge next inquired of the prosecutor as to a "plea bargaining agreement," to which the latter responded that the agreement extant was ten years, probated.[13] Defense counsel and appellant affirmed that such was their understanding of the agreement, then counsel added,

"MR. ZIMMERMAN: If I might for the record make sure there is no confusion by other people other than the four of us in the future: *the plea bargaining agreement* also *includes* the intention of this defendant *in both causes* to preserve *his right of appeal* in Article 26.13, the Court having overruled our Motion to Suppress the Evidence *and the Court will note* that the [written stipulation] form has been modified to strike out 'judicial confession.' *There is no judicial confession. We are stipulating* to the *evidence that the State would introduce* in both cases, and there is no judicial confession."

Again the court interrogated all parties as to their understanding and agreement in this regard, then concluded, "*the Court is consenting* and permitting the defendant to appeal this matter [as to the legality of the search herein.]"

Requisites of Article 26.13, V.A.C.C.P., having been effected, the trial judge directed the prosecutor to proceed with introduction of his evidence.[14] The State initially

---

13. Also stated at this point was the agreement reached in the possession of marihuana case: ". . . the State recommends that the third degree felony be reduced to a class A misdemeanor, that the defendant be sentenced to three days in Harris County jail, credit for two days and $1,000.00 fine."

14. Article 1.15, V.A.C.C.P. provides that all felony convictions must be upon the "verdict of a jury duly rendered and recorded" unless the defendant waives his right to trial by jury in

writing in open court upon entering a plea of guilty to a felony less than capital.

This is still further conditioned on the necessity that "*the State . . . introduce evidence* into the record showing the guilt of the defendant and *said evidence shall be accepted by the court as the basis for its judgment* and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same. The *evidence may be stipulated if the defendant* in such case *consents in writing,* in open court, *to waive the appearance, con-*

offered, as State's Exhibit No. 1, a written document the prosecutor called "the plea of guilty." The record before us reflects that this document is actually the written stipulation required by Article 1.15, supra, in which appellant merely waived his rights to trial by jury, appearance, confrontation and cross examination of witnesses and consented to oral and written stipulations of evidence. Nothing contained in State's Exhibit No. 1 admits or confesses appellant's guilt.[15]

After receiving State's Exhibit No. 1, the trial judge asked appellant to affirm that the exhibit was his stipulation, which he did. Appellant then acknowledged upon questioning, that he was stipulating to the admission of the examining trial transcript, which truly represented the evidence which would be adduced if the witnesses therein were called to testify. Thereupon the court received and admitted the transcript of the examining trial testimony, found appellant guilty and proceeded to assess punishment in accord with the plea bargaining agreement. A short hearing on appellant's plea to the misdemeanor possession of marihuana charge followed, only a small portion of which is necessary to the resolution of the issues on rehearing; that portion will be related *post*.

■ Where in the record then, did the panel on original submission find sufficient "evidence independent of the matter contested in the pre-trial motion"? In this regard, the opinion alludes only to "the stipulated testimony" of the officers originally adduced at an examining trial, but emphasizes the fact that "[t]he *handgun* was not admitted into evidence during trial." We can only deduce from this it was the panel's consensus that transcribed examining trial testimony of peace officers detailing the search and seizure of appellant does not constitute "fruits" of the very search he contests. With all due respect to the unanimous panel, we now hold that it does.

In *Brewster*, supra, the State argued that since none of the 480 tablets of hydromorphone had been offered, no "fruit" of the disputed search had been introduced, and urged application of the *Ferguson* rationale. In rejecting the State's position we observed that notwithstanding the failure to introduce the 480 tablets,

"... there was admitted *stipulated testimony* of the chemist who analyzed that they were hydromorphone. It would seem that his testimony *is as much fruits of the arrest and search* and certainly more critical then admission of the tablets themselves."[16]

*Brewster*, supra, at 328.

Having found the stipulated testimony to constitute a fruit of the search, it was observed nevertheless that,

"... we do not determine validity of seizure of evidence unless that which remains unchallenged is insufficient to support a conviction. The review exercise is much like the search of the appellate record for a judicial 'confession' or 'ad-

frontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. Such waiver and consent must be approved by the court in writing, and be filed in the file of the papers of the cause."

15. In fact, all references in this standard form to "judicial confession," waiver of "right against self-incrimination" and the "truth of the indictment allegations" are painstakingly marked through and initialed by appellant and his attorney. In compliance with Articles 1.15, supra, and 1.13, V.A.C.C.P., the document is signed by appellant, his counsel, the prosecutor and approved by the trial judge, all on the day of trial, April 2, 1980!

Rarely does this Court see such conscious and exacting effectuation of the directives contained in Articles 1.13, 1.15 and 26.13, all supra, as is reflected by this record.

16. Of equally critical import, the stipulated testimony of the chemist included the assertion that the tablets he analyzed had come from a vehicle occupied by the appellants. This evidence therefore was both a fruit of the search *and* inculpatory, as it must be to preserve the error.

By contrast, stipulated testimony of two peace officers, though detailing the stop of appellants, stopped short of establishing appellants' *possession* of the hydromorphone.

mission' deemed adequate to show guilt...."

*Brewster*, supra, at 328.

Applying the exercise in *Brewster*, we observed: the stipulated testimony by the chemist was all that was both a fruit of the search and incriminating; the stipulated testimony of two police officers did not establish the offense. So, putting both aside, all remaining was a written stipulation which averred that witnesses—*without naming them* —would testify to appellants' commission of the offenses charged, embracing every element thereof. Thus, we were constrained to hold:

"Since that evidence is not shown to be *based on, derived from or in anyway tainted by* the asserted constitutionally impermissible stop, arrest and search, we must conclude it was independently obtained by the witnesses."

*Brewster*, supra, at 329.

In the instant case, however, *nothing* was admitted into evidence other than the transcribed examining trial testimony of the officers who escorted, arrested and ultimately searched appellant. Because this evidence was both a fruit of the contested search, and the only evidence which supplied proof of every element of the offense, appellant has preserved his right to have this Court determine the merits of his pretrial motion to suppress evidence in the felony case, and we so hold. Cf. *Isam*, supra.

■ In the misdemeanor case, the panel held on original submission that Article 44.-02, supra, requires a written pretrial motion to suppress, and since appellant only moved to suppress the evidence *orally*, nothing was presented for review. Overlooked, however, was the colloquy with the trial court in which appellant was granted *permission* to appeal the search issue in the misdemeanor case: [17]

"THE COURT: The Court will accept your plea of guilty in this particular

offense also, ... Is there a plea bargaining agreement in the case?

Mr. Harmon: There is, Your Honor. Three days in jail, credit for one day, and $1,000.00 fine.

THE COURT: Is part of the agreement also that the *defendant can preserve his right to appeal* ... as to the legality of the search herein?

\*   \*   \*   \*   \*   \*

Mr. Harmon: *Yes.*

\*   \*   \*   \*   \*   \*

THE COURT: Let the docket sheet show that the defendant has preserved his right to appeal and *the Court gives the defendant the consent to appeal in that if he desires.*"

Appellant at this point moved orally to suppress the evidence obtained as a result of the search, and the trial court overruled the motion.

We hold the trial court's consent to appeal the issue involving the search in the misdemeanor case invoked the jurisdiction of this Court to consider it pursuant to the patent provisions of Article 44.02, supra, and the failure to file a written pretrial motion to suppress was therefore inconsequential.

■ Turning finally to the merits of appellant's complaints directed to the seizures of the pistol outside the Jesse James Club and, subsequently, of marihuana at appellant's apartment, we first observe the testimony of Officer Brooks and his supervisor, Sergeant Tarver, was uncontradicted. According to the officers, dressed in street clothes they approached appellant inside the Club, identified themselves and asked him to step outside to talk, which appellant readily agreed to do. As the men descended the outside stairs, Tarver was almost "side by side" with appellant, though slightly behind; Brooks was several feet behind the other two and due to appellant's move-

---

17. See also n. 12, *ante*, and accompanying text, in which permission to appeal was first obtained regarding this "related charge," Cause No. 66,364, the misdemeanor possession of marihuana.

ments, was able to see a pistol in his waistband through a center slit in the back of his coat. At the bottom of the stairs, Brooks said "hold it," and seized the pistol.

Appellant makes much of testimony by Tarver that Brooks had earlier informed him that appellant was known to carry a pistol on occasion; this, argues appellant, was insufficient information to justify the "detention" of appellant under the Fourth Amendment as interpreted in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. While what appellant says is true, he overlooks the fact that the evidence reflects no submission on his part to a show of force or authority which left him no choice; instead, he went with the officers voluntarily, apparently in a spirit of cooperation.

> "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent [an objective and particularized suspicion that a particular person is engaged in specific criminal activity] [18] the person approached may not be detained or frisked but may refuse to cooperate and go on his way."

*Terry v. Ohio*, supra, at 34, 88 S.Ct. at 1886 (White, J., concurring).[19] Accord *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Compare *Merideth v. State*, 603 S.W.2d 872 (Tex.Cr.App.1980) with *Hull v. State*, 613 S.W.2d 735 (Tex.Cr.App.1981).

■ It is only when a person chooses not to be questioned, or remains in submission to a show of force, that the officer's insistence on questioning that person becomes a "seizure" subject to constraints of the Fourth Amendment. E. g., *Brown v. Texas*, supra; and *Hull*, supra; see also *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). We hold that appellant's agreement to converse with the officers outside the Jesse James Club renders the *Terry* line of cases inapposite.

Thus, Officer Brooks was lawfully outside the Club, descending stairs behind appellant when he observed the pistol in appellant's waistband. Accordingly there was no "search," and the seizure of the pistol was reasonable under established principles of law. *Milligan v. State*, 554 S.W.2d 192 (Tex.Cr.App.1977); see also *Berry v. State*, 579 S.W.2d 487 (Tex.Cr.App.1979).

We accordingly hold the trial court's refusal to suppress evidence concerning the seizure of the pistol from appellant's person was proper. Thus, the judgment of conviction in the felony case, Cause No. 66,363, is affirmed.

The success of appellant's ground of error in the misdemeanor case is wholly dependent upon our determination of the legality of the seizure of the pistol: he contends that since his arrest pursuant to that seizure was illegal, his subsequent consent to search his apartment which ultimately produced the marihuana, was a product of the initial intrusion,[20] citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); and *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ This ground of error must also fail. As we have held above, the seizure of the pistol Officer Brooks observed in plain view

---

**18.** *United States v. Cortez*, —— U.S. ——, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

**19.** The majority opinion in *Terry v. Ohio* took care to distinguish the issue decided from situations such as the one before us:

"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. *Only when the officer, by*

means of physical force or show of authority, *has in some way restrained the liberty* of a citizen may we conclude that a '*seizure*' has occurred."

*Terry v. Ohio*, supra, at 19, n. 16, 88 S.Ct. at 1879 n. 16.

**20.** Appellant does not contend his consent to search his apartment was *involuntary*.

from appellant's person justified his immediate arrest. Article 14.01, V.A.C.C.P. See *Brown v. State*, 594 S.W.2d 86 (Tex.Cr.App. 1980); and *Hamilton v. State*, 590 S.W.2d 503 (Tex.Cr.App.1979). Since appellant's arrest was not unauthorized, his consent to search his apartment could not be a "tainted" product thereof. Thus, the trial court appropriately denied appellant's motion to suppress the marihuana, and the ground of error in Cause No. 66,364 must also be overruled.

Appellant's motions for rehearing having been considered, his grounds of error are overruled.

DALLY and TEAGUE, JJ., concur.